(145) Evidence was given that the debtor said he would never pay the debt to Harris if he could help it, and that he was the brother *Page 127 
of John Kirkman and son of Levin Kirkman, Sr. Evidence was also given by the father that his son, Levin, truly owed him $300 and upwards, and that in May, 1829, he applied to him to secure the debt by a deed of trust for his land, which the son refused to give, unless the father would take one to cover all his property, which he said would enable him to save some of it. The bond for $200 was given at the time the deed was executed. It was executed at the house of Levin, Jr., and without the knowledge of the father, to whom the son refused to deliver it on that day, but did deliver it the next. Afterwards John Kirkman paid the bond.
The case stated that the judge explained the law of frauds against creditors to the jury, and instructed them that if the deed were not fraudulent it would be good in law, although the bond was executed without the knowledge of Levin, the father, and was not delivered until the next day, for that the other considerations were sufficient to support it, and as the bond was beneficial to the father, his acceptance was to be presumed, and when made related to the execution of the bond, provided the bond was made with the intention in good faith to deliver it.
A verdict was returned for the plaintiff, and the defendants appealed.
I do not question the proposition laid down that a debtor may, in the absence of his creditor, execute a bond in his favor, or a deed by way of a security for a debt due by bond or otherwise, and that such bond or deed, if made with an honest purpose, will be effectual when assented to by the creditor, and that such an assent is to be presumed. Yet it is a suspicious circumstance that the deed should be made of all the property, on the debtor's own motion, without (146) being at all sought by the creditor to secure a particular debt. But I more than question whether such an instrument, when kept by the party making it, and subsequently delivered, has relation for any purpose beyond the actual delivery. But I do not think it necessary to discuss that, because I conceive the deed to be plainly fraudulent, in a point of view not explained to the jury, for which I think there must be a new trial.
The whole controversy, as appears from the case, turns upon the question of fraud. Now I do not question the power nor the sole power of the jury to find the intent, when it is to be made to appear by matter extrinsic of the deed. But what intent is in law fraudulent the court must inform the jury, else the law can have no rule upon the doctrine of fraud, and every case must create its own law. I think here is plain *Page 128 
fraud. The deed was not made to secure a debt. I mean that was not the design of it. The debt was created, that is, the responsibility for which the deed is declared to be an indemnity for the sake of a pretense for making the deed, and thereby securing the use and possession of the property to the debtor.
There are various species and various evidences of fraud. A common instance is, where the debt is not a true one, of which the strongest evidence is the possession unreasonably remaining with the pretended debtor. Another instance is, where the debt is a true one, but the possession is left so as to give the debtor a delusive credit and enable him to cheat honest men. And in every case where it is made manifestly to appear that, notwithstanding the deed, the debtor is to have the real use, as it were, the beneficial ownership of the property, it is a presumption of law, to be delivered to the jury, that the deed is fraudulent. This is founded upon both the foregoing principles combined. It is on the one hand evidence that the consideration is feigned, and on the other that it was designed by both parties to hold out to the world a false appearance as to the circumstances of the debtor, and thus (147) entrap subsequent creditors, as well as deceive prior ones. These inferences from possession are certainly open to explanation, and are to be drawn by the jury. But the tendency of the evidence and the grounds of the inferences are proper subjects for observation from the bench. There is, however, another principle equally important, which is also connected with this subject. The law intends that no man shall contract a debt which he does not mean to pay, and will not uphold any means taken to enable or encourage him to do so. If, therefore, as is mentioned in Twine's case, a conveyance be taken for a true debt, upon the understanding that the debtor is to have the use of the property, that although it is apparently conveyed in satisfaction or security for it, yet the beneficial ownership is to be with the debtor, it is void. Why? Because it is taken that in truth it was not taken for the very purpose of satisfying the debt, but under the cover thereof, for the ease and favor ofthe debtor, either generally or for some definite time. What temptations would it not hold out to dishonest men to run up scores, without the smallest intention of making payment, if by finding a friend amongst their creditors they could enjoy their property all their lives against the other creditors? It must be made men's interest not to be dishonest incontracting a debt, more than in putting away their property from all their creditors. And the only way to do that is by saying that if it appear that the conveyance was truly made, not for the creditor's benefit, but for the debtor's, it is void. It is true that where the debt is a just one, the covenous intent is difficult of proof, and can seldom be proved because prima facie a just debt makes the deed bona *Page 129 
fide. Nevertheless, where the intent can be reached, it is not the less fraudulent, indeed has more moral depravity because it assumes a more specious appearance.
This is a case in which I think it is reached and plainly exhibited. The debtor wished expressly to evade the payment of Harris' debt. To effect it, he had endeavored to make a conveyance of all his property to his father, which the latter refused, though he wished a security upon what he deemed enough. In the father's absence, and without his privity, he does not make a deed to secure the payment to his (148) father, but gets two other men to join him in a bond to the father, and then conveys to indemnify them. Why should they volunteer this liability? They knew the debtor's insolvency and had taken a deed for the land in part payment of their debt. Only the small balance of $50 remained due to them. Why did they not secure that on part of the property? Because it would not answer the purpose. The object was to cover all, and to enable them to do so with some color, they execute the bond, leave it with the debtor, and take a deed for everything to pay the $50 and repay them what they should pay to the father. That the bond was made with this view is further to be inferred, because there had been no settlement with the father and the debt was assumed at a venture for the occasion. Were this bond and deed made for the security of the creditor (the father), or were they executed for the different purpose of shielding the debtor from the assaults of other creditors, and retaining his effects, his household stuff and provisions on hand, and growing crops, to the use and ease of the debtor himself, or to use his own words, to save his property? All may judge, and few can be deceived, I think. For the purposes of this life, the debtor is as well off as if the property were his own, and he owed not a cent, supposing the deed could be made with this intent and could be supported, yet as to his creditors he is not worth a cent, and they are defied.
I do not say that the court ought to have instructed the jury that such conclusions of fact were drawn by the law. Far from it. But I think they ought to have been informed that they might be made from the evidence, if believed, and submitting the case to them on that point, to have been told that if they found the bond and deed were made with that intent, the latter was void. The instruction would then have been given on the gist of the controversy. As the case was not so presented to the jury, I think there ought to be a new trial that it may be.
PER CURIAM. Judgment reversed.
Cited: Hafner v. Irwin, 23 N.C. 497; Isler v. Foy 66 N.C. 551;Rencher v. Wynne, 86 N.C. 274; Cannon v. Young, 89 N.C. 266. *Page 130 
(149)